IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21-cr-00087 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| CHRISTOPHER PORTER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Christopher Porter ("Porter") was charged with three counts of bank robbery (Counts I, II, and IV) and one count of brandishing a firearm in relation to the second count of bank robbery (Count III) in a March 4, 2021 indictment. Before the Court is defendant's motion to sever the first count of bank robbery from the remaining counts [39] and his motion to suppress evidence [38]. For the following reasons, the Court denies both motions.

**Background**

The allegations contained in the indictment arise from three separate bank robberies: a November 13, 2020 robbery of a Citibank (Count I); a December 22, 2020 robbery of a Chase Bank (Count II); and a February 4, 2021 robbery of a Fifth Third Bank (Count IV). On November 13, 2020, a man approached a teller at a Citibank branch on Western Avenue and demanded the teller "put all the money in the bag." The teller described the robber as a black male, approximately 6'0" tall, with an average to stocky build in his 40s. Surveillance footage showed the man wearing a black hat, black jacket, face mask, and black shoes with white soles. Surveillance footage also captured a man matching this description exit a silver Ford Explorer with a large, white decal on the rear window and walk toward the Citibank immediately before the robbery. A few minutes later, that man returned to the vehicle.

On December 22, 2020, a man robbed a Chase Bank located on North Clark Street in Chicago, Illinois. The teller identified the robber as a black male, approximately 40 years old, between 6'1" and 6'2" tall, weighing around 220 pounds. After demanding $20,000 from the teller while brandishing a gun, video surveillance captured the man exit the bank and enter a silver Ford Explorer with no rear window decal, which sped down the street. Additional footage captured the driver exit the vehicle fourteen minutes after the robbery to affix a license plate to the Ford Explorer. Capturing an image of the license plate through a City of Chicago automatic license plate reader, law enforcement identified the 2007 Ford Explorer as a vehicle registered to Porter.

Law enforcement then, without obtaining a search warrant, queried the National Vehicle Location Services, an automatic license plate reader database, for images of Porter's license plate over a period of eight weeks. The Government contends at least two of these images are pertinent to the investigation. The first, taken on November 11, 2020, two days before the first robbery, showed the Ford Explorer registered to Porter bore a large white decal on the rear window similar to that on the vehicle used in the November 13 bank robbery. The second, taken on November 15, 2020, two days after the robbery, showed Porter's vehicle without the rear window decal. Based on this information, law enforcement obtained a warrant to install a GPS tracking device on Porter's silver Ford Explorer for 45 days.

On February 4, 2021, a man robbed a Fifth Third Bank on West 25th Street in Chicago, Illinois. Using a gun, the robber demanded $20,000 from the teller. The teller identified the robber as a black male, approximately 40 years of age, approximately 200-220 pounds, with a medium build, 6'0" or taller. Cameras in the area of the robbery captured a black male with a similar description flee the bank. Three minutes later, cameras captured a silver SUV traveling away from the bank toward the area where law enforcement ultimately located Porter's vehicle.

**Discussion**

I.    *Motion to Sever Counts*

Rule 8 of the Federal Rules of Criminal Procedure allows joinder of offenses if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Clearly, all four counts were properly joined in the indictment against Porter. As to the three robbery charges, "the fact that the charges are the same is a sufficient basis for uniting them under the rule." *United States v. Jamal*, 87 F.3d 913, 914 (7th Cir. 1996). Defendant does not contest joinder of Count III.[1]

Therefore, the Court turns to Rule 14 of the Federal Rules of Criminal Procedure, which permits a Judge, in her discretion, to sever offenses that may unduly prejudice the defendant in having the charges tried together. *See United States v. Davis*, 724 F.3d 949, 956 (7th Cir. 2013). Porter contends that failure to sever the counts would unfairly prejudice him as the evidence for Counts II and IV would improperly spillover to the jury's consideration of the evidence on Count I, depriving the defendant of a fair trial. *Id.*

Here, Porter has failed to show a serious risk of prejudice in trying the bank robbery counts together. First, because the evidence in support of the severed counts would nonetheless be admissible at trial in the remaining count, no prejudice exists to the defendant in trying all counts together. *United States v. Rollins*, 301 F.3d 511, 519 (7th Cir. 2002). Despite defendant's argument to the contrary, evidence presented in Counts II and IV would likely be admissible at trial on Count I to prove identity under Federal Rule of Evidence 404(b). In all three robberies, which occurred over a period of three months, eyewitnesses gave similar physical descriptions of the robber, who drove away in a silver Ford Explorer. Therefore, evidence of the similar factors in the December and February robberies could serve as admissible evidence of identity or *modus operandi* at trial for the

---

[1] While defendant requests severance of Count III in his motion, his argument makes clear that he refers to the third bank robbery charge, Count IV. The Court refers to the charges as numbered in the Indictment.

November robbery under Rule 404(b). *See United States v. Traeger*, 289 F.3d 461, 473 (7th Cir. 2002) (upholding denial of severance where evidence of one robbery would be admissible to show identity at trial for attempted robbery). Even if the joint trial put Porter at risk of some prejudice, a well-drafted limiting instruction is presumed to serve as an appropriate safeguard. *See United States v. Peterson*, 823 F.3d 1113, 1124 (7th Cir. 2016) (citation omitted) (applying the presumption that a jury "will follow limiting instructions from the court to consider each count separately.").

Furthermore, Porter's argument that joinder of the offenses will violate his Fifth Amendment right to remain silent is unpersuasive. Defendant cites no law in support of this proposition. Porter merely contends that joinder of the counts improperly shifts the burden of proof to him, requiring Porter to prove that he was not the bank robber on November 13, 2020. Not only is this not required, but Porter would not be compelled to testify.

II.  *Motion to Suppress Evidence*

Porter moves to suppress all evidence obtained from the license plate reader database search. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A search may occur under the Fourth Amendment when the government physically intrudes into a constitutionally protected area or "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Thompson*, 811 F.3d 944, 948 (7th Cir. 2016) (citing *United States v. Karo*, 468 U.S. 705, 712, 104 S. Ct. 3296, 3302, 82 L. Ed. 2d 530 (1984)).

Here, the question is whether the query of the automated license plate reader infringed upon Porter's reasonable expectation of privacy to his publicly displayed license plate while driving on public roads. Porter contends that it did because the data as a whole unduly revealed his private movement. Generally, individuals do not possess a reasonable expectation of privacy for information they voluntarily display to the public, especially when traveling in automobiles. *United States v. Knotts*, 460 U.S. 276, 281–82, 103 S. Ct. 1081, 1085, 75 L. Ed. 2d 55 (1983). However, use of

4

technology to extensively surveil public travel may nonetheless rise to the level of a search, especially where it reveals "a wealth of detail about [the individual's] familial, political, professional, religious, and sexual associations." *United States v. Jones*, 565 U.S. 400, 415, 132 S. Ct. 945, 955, 181 L. Ed. 2d 911 (2012) (opinion of Sotomayor, J.); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2217, 201 L. Ed. 2d 507 (2018).

Law enforcement's use of the automated license plate reader database did not infringe upon Porter's reasonable expectation of privacy. Under the framework outlined in *United States v. Jones*, the database query response did not reveal intimate details of Porter's daily life, nor did it track his every movement. 565 U.S. at 415 (opinion of Sotomayor, J.). Rather, the query produced limited images of Porter's vehicle at public locations over a period of approximately eight weeks, which reveals little about the intimate details of his life. *See United States v. Tuggle*, 4 F.4th 505, 529 (7th Cir. 2021) (holding that use of pole cameras over an 18-month period did not constitute a search because the cameras did not expose intimate details of the defendant's life nor capture the whole of his physical movements). In fact, when the Government sought detailed information about Porter's location and movement, it obtained a warrant to place a GPS tracking device on his Ford Explorer. While the Supreme Court has warned that the aggregation of publicly displayed information obtained through new technologies may trigger Fourth Amendment protections, that is not the case here. *See generally Carpenter*, 138 S. Ct. at 2217.

**Conclusion**

For the reasons stated above, defendant's motion to sever counts [39] and motion to suppress evidence [38] are denied.

**IT IS SO ORDERED.**

Date: 1/13/2022        Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

5